Аmerican Feature Film Co., and Metro Pictures Corporation of New England, Petitioners, v. Commissioner of Internal Revenue, Respondent.

Docket No. 4437.   Promulgated May 10, 1928.

*Charles D. Hamel, Esq.*, and *Lee I. Park, Esq.*, for the petitioners.

*A. R. Marrs, Esq.*, for the respondent.

1274

OPINION.

LITTLETON : It is claimed by petitioners that assessment and collection of any additional tax are barred by the statute of limitations for the reason that the several written consents were invalid. It is argued that the written consents for a later determination, assessment, and collection of the tax here involved are invalid because the directors did not specifically authorize the execution thereof and because the person who signed the first consents on behalf of the petitioners was not an officer of either corporation. It is further argued that the consents executed in 1924 on behalf of the Metro Corporation by its president are invalid because the corporation was dissolved in April, 1923. Petitioners are endeavoring to take advantage of their own negligence. The record discloses that the consents were executed in the manner and form shown by the persons mentioned after consultation with the duly constituted attorney in fact who was specifically authorized and empowered by the petitioners to " do any and all things and to take any and all action in reference to any and all matters relating to taxes. with the United States Government or its officials " and that said attorney in fact was granted " full power and authority to act in and concerning the premises as fully and effectually as it [the corporation] might do if personally present and represented by its officers." The attorney in fact was continually engaged in handling the matter of the Federal taxes claimed from the petitioners and the several consents hereinbefore referred to were executed at his instance. The oral testimony as to what connection Samuel Bischoff, who signed the two consents dated February 16, 1923, had with the petitioners is indefinite and conflicting. It is claimed that he was not an officer or employee of either corporation, but this is contrary to the weight of evidence. Written consents relating to the same taxable year were subsequently, in January, 1924, executed by the president of each corporation, which consents, if otherwise valid, were effective to postpone the bar of the statute. *Joy Floral Co.*, 7 B. T. A. 800. Petitioners argue that the consents executed by the president of the petitioners were invalid because there was no specific action by the directors of the corpora· tion authorizing the same, but we think this contention is without merit. The general rules applicable to the determination of the validity of contracts are not applicable in the determination of the validity of the consent to a later determination, assessment, and col-

lection of additional tax under the various revenue acts. We think Congress used the word "consent" advisedly. To consent implies the idea of acquiescence to a matter of conduct, the assent to the performance of an act or duty in other than the usual or customary manner, or at a time other than that prescribed, and we think a consent to a later determination and assessment of tax of a corporation signed by an officer of the corporation in the regular course of business, although without specific authorization by the board of directors, is valid and effectual to suspend the operation of the statute of limitation for such period as may be specified therein. It is well known that in the general conduct of affairs of corporations it is customary for the corporate officers to perform many acts that partake of agreements or consents, as may be for the best interest of the corporation, and it would be unreasonable to suppose that every act of regularly constituted officers of a corporation must have specific approval by vote of the board of directors. A consent to a determination and assessment of whatever tax may be due by the corporation beyond the period specified in the statute is nothing more than approval by the officer or officers of a corporation of a policy to be pursued in the conduct of affairs of a corporation in respect of such matters or the concurrence or acquiescence by such officer on behalf of the corporation to the performance by the Commissioner at a later date of an act which the statute prescribes shall otherwise be performed by him within a specified time. There is no element of bargain in the execution of a consent for a later determination and assessment of a tax imposed by Congress.

In *Wirt Franklin*, 7 B. T. A. 636, the Board said:

The instrument under consideration is denominated an "income and profits-tax waiver." It is in fact a bilateral undertaking entered into by the parties pursuant to the statute. Technically, it is not a waiver of the statute, for it is made pursuant to the statute. It is not an acknowledgment of any existing obligation or a new promise to pay, from which a new cause of action arises, thus beginning anew the period of limitation. It is not an agreement not to plead the statute of limitations as a defense to any asserted tax liability. In short, it is not something to be considered as in avoidance of the statute. By the statute and by its terms, it operates to extend the time.

A consent to such later determination, assessment, and collection primarily benefits the taxpayer for the reason that when such consent is entered into the taxpayer is given an opportunity to further contest the correctness of the proposed additional tax before being required to pay the same and bring suit for recovery, or prosecute anew its claim before some other tribunal. We think it would be going beyond the intent of the statute to hold that a consent by a corporation in order to be valid must have the specific approval of the board of directors. The fact that the consent to be effective must be in writing and signed by the Commissioner gives it no greater signifi-

cance than if the Commissioner were not required to sign it. Nor does the fact that it must be in writing and signed by the taxpayer and the Commissioner give it all of the essentials of a contract. A consent is exactly what the word implies—a concurrence, aquiescence.

It is further argued that the consents relating to the Metro Corporation were invalid because they were signed after the corporation had been dissolved. Edw. A. Golden had for several years been president of this corporation and was such officer at the date of dissolution. Since dissolution Golden has continued to act for the corporation in the settlement of its affairs. The petition of this corporation filed with this Board was signed and sworn to by Golden as president of the corporation. The Act of the Senate and House of Representatives of the Commonwealth of Massachusetts in General Court assembled April 4, 1923, dissolving this corporation, provided:

SECTION 2. Nothing in this act shall be construed to affect any suit now pending by or against any corporation mentioned herein, or any suit now pending or hereafter brought for any liability now existing against the stockholders or officers of any such corporation, or to revive any charter previously annulled or any corporation previously dissolved, or to make valid any defective organization of any of the supposed corporations mentioned herein. SECTION 3. Suits upon choses in actions arising out of contracts sold or assigned by any corporation dissolved by this act may be brought or prosecuted in the name of the purchaser or assignee. The fact of sale or assignment and of purchase by the plaintiff shall be set forth in the writ or other process; and the defendant may avail himself of any matter of defence of which he might have availed himself in a suit upon the claim by the corporation, had it not been dissolved by this act. SECTION 4. Nothing in this act shall be construed to relieve the last person who was the treasurer or assistant treasurer, or, in their absence or incapacity, who was any other principal officer, of each of the corporations named in .this act, from the obligation to make a tax return as of April first following the date of dissolution and swear to the same as required by section thirty-five of chapter sixty-three of the General Laws. The tax liability of each of the corporations named in this act shall be determined in accordance with the existing laws of this commonwealth. SECTION 5. This act shall take effect as of March thirty-first in the current year.

Section 51, Chapter 155, of the General Laws of Massachusetts, provides as follows:

Every corporation whose charter expires by its own limitation or is annulled by forfeiture or otherwise, or whose corporate existence for other purposes is terminated in any other manner, shall nevertheless be continued as a body corporate for three years after the time when it would have been so dissolved for the purpose of prosecuting and defending suits by or against it and of enabling it gradually to settle and close its affairs, to dispose of and convey its property and to divide its capital stock, but not for the purpose of continuing the business for which it was established; provided, that the corporate existence of such a corporation, for the purpose of any suit brought by or against.it within said period of three years, shall continue beyond said period for a further period of sixty days after final judgment in the suit.

Under this section the officers of the corporation had the same authority after dissolution to act in respect of prosecuting and defending suits by or against the corporation and in settling and closing the affairs of the corporation as before. We are of opinion also that the proceeding before this Board which was instituted by the filing of the petition May 25, 1925, may be termed a suit within the meaning of this section, and that the adjustment of tax claims against the corporation is a matter incident to closing and settling the affairs of the corporation. For those reasons, we are of opinion that acts of Golden in respect of verifying the petition and in executing the consents on behalf of the corporation in connection with its pending tax liability for periods prior to dissolution were in all respects valid.

For the reasons given we are of opinion that the claim of petitioners that the consents were invalid and of no effect is without merit.

Petitioners contend that the consents did not operate to extend the period for collection of the tax beyond April 1, 1926, and that, inasmuch as no collection was made within that time, the unpaid tax is now barred. This contention is not well taken. *Art Metal Works*, 9 B. T. A. 491. *Trustees for Ohio & Big Sandy Coal Co.*, 9 B. T. A. 617.

The evidence shows that the salaries claimed for 1917 and 1918 for the treasurer and assistant treasurer of each of the petitioners were duly authorized and were accrued expenses for those years. Also that petitioners incurred legal expenses in 1917 and 1918 as hereinbefore set forth, which amounts were proper deductions from gross income.

The Board is of the opinion that the Commissioner was not in error in denying petitioners' claim that the cash value of stock of the Bluebird Photoplays of New England, Inc., was $95,000 at the time acquired by the Metro Corporation for stock in March, 1917. Petitioners claim a cash value of $95,000 for this stock at the time acquired and further claim that the stock became worthless and was a loss in 1919. There is evidence showing the receipts resulting from the exhibition throughout New England of certain pictures similar in character to the Bluebird pictures and with which the Bluebird pictures might be favorably compared but there is no evidence indicating that any profit was realized by the Bluebird Photoplays of New England, Inc., from exhibiting the Bluebird pictures. Whatever value the Bluebird stock had was purely speculative. Some testimony was adduced tending to show the profits that might possibly have been realized had difficulties and litigation not arisen with the Bluebird Photoplays of New York, but so many factors

enter into the successful carrying out of such undertakings, and the lack of sufficient evidence as to the cash value claimed for this stock in March, 1917, is so apparent in this proceeding that the Board can not find that the stock of the Bluebird Photoplays of New England, Inc., at the time acquired in March, 1917, by the Metro Corporation had at that time the cash value claimed.

In computing invested capital for each of the years 1917 and 1918 the current earnings available for the payment of dividends should not be reduced by a tentative tax computed upon the earnings of an entire year prorated. *L. S. Ayers & Co.*, 1 B. T. A. 1135; *Lock, Moore & Co., Ltd.*, 7 B. T. A. 1008; *All America Cables, Inc.*, 10 B. T. A. 213.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*